IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TAWANNA P. HAGANS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 23-1973-BAH |
| GINA RAIMONDO,<br>*in her official capacity as Secretary of the*<br>*U.S. Department of Commerce*, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This is a federal employment discrimination suit brought by Plaintiff Tawanna P. Hagans, a former employee of the United States Census Bureau (the "Agency").[1] Plaintiff raises discrimination and retaliation claims under Title VII and discrimination claims under the Age Discrimination in Employment Act of 1967 (the "ADEA"). ECF 1, at 12, 14–15. Defendant Gina Raimondo, in her official capacity as the Secretary of the United States Department of Commerce, filed a partial motion to dismiss Plaintiff's complaint (the "Motion"). ECF 10. Plaintiff filed an opposition, ECF 11, and Defendant filed a reply, ECF 14. I have reviewed the parties' filings, including memoranda of law and exhibits accompanying the filings.[2] The Motion is fully briefed and ripe for disposition. I have reviewed the record and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED**.

---

[1] The Census Bureau is a component of the United States Department of Commerce.

[2] I reference all filings by their respective ECF numbers, and I reference page numbers by the ECF-generated page number at the top of the page.

I.      **BACKGROUND**

   A.      **Factual Allegations**

Plaintiff began her career in federal service with the U.S. Department of Energy in 1998. ECF 1, at 4 ¶¶ 15–16.  After advancing from a GS-7 to a GS-14 at the U.S. Department of Energy, in November 2014, Plaintiff took a position with the Agency as a Budget Analyst at the GS-12 level.  *Id.* ¶¶ 17, 20.  Ultimately, Plaintiff alleges that despite applying for many GS-13 positions with the U.S. Census Bureau, and though she "was qualified, referred, and interviewed for each position," Plaintiff was never selected.  *Id.* ¶ 19.  For instance, Plaintiff alleges that in 2016 the Human Resources Division announced that all Budget Analysts at the GS-12 level were being promoted to GS-13, however, Plaintiff "never received the promotion and stayed at the GS-12 level."  *Id.* at 5 ¶ 20.  Plaintiff alleges she was passed over for promotions because she is a "Black, African American woman" born in August 1962.  *Id.* at 4 ¶ 1.

   1.      Summary of Allegations Against Ms. Burnette

During Plaintiff's time at the Agency, Plaintiff's first-line supervisor was Sharon L. Burnette, Assistant Division Chief (ADC), GS-15, Budget Division, *id.* ¶ 21, and her second-line supervisor was Everett G. Whiteley, Chief, SES, Budget Division, *id.* ¶ 22.  Ms. Burnette was the first-line supervisor to two employees: Plaintiff and Jennifer L. DiMisa.  *Id.* ¶ 23.  Ms. DiMisa is Caucasian.  *Id.*  Plaintiff alleges that she complained about Ms. Burnette favoring Ms. DiMisa.  *Id.* ¶ 24.  In 2018, Plaintiff alleges that Ms. DiMisa was promoted from a "GS-13, step 8 to GS-13, step 10, equivalent to a GS-14, step 4, while [Plaintiff] remained at a GS-12, step 10."  *Id.* ¶ 25.  Ms. DiMisa also received cash awards, due to her receiving the "highest performance rating score of 500 that an employee can receive at the [Agency]," while Plaintiff's performance ratings were lowered from 320 to 140 and she was removed from federal service. *Id.* ¶ 26.

2

Plaintiff alleges Ms. Burnette treated Plaintiff differently than Ms. DiMisa by "not setting [Ms. DiMisa] short and unrealistic deadlines; not giving Ms. DiMisa contradictory instructions; providing Ms. DiMisa clarification and guidance; allowing Ms. DiMisa to use overtime and comp time to complete tasks if needed; and allow[ing] Ms. DiMisa to complete work after the end of her scheduled duty if required." *Id.* at 6 ¶ 34.

As other evidence of Ms. Burnette's discrimination, Plaintiff alleges that in "Ms. Burnette's entire career at the [Agency], she never hired any African American employees to work for her." *Id.* at 5 ¶ 27.  For instance, Ms. Burnette hired a Budget Analyst around November 2020, Casey Shannon (Caucasian), as a GS-7.  Ms. Casey had no budget analyst experience and had to be fully trained in her position. *Id.* ¶ 28.  Plaintiff alleges that at the time of her Equal Employment Opportunity ("EEO") Charge (Case No. 63-2020-01152), there were only Caucasian supervisors in the division, and her supervisor, Ms. Burnette, "created a work environment that refused to acknowledge [Plaintiff's] accomplishments and refused to promote [Plaintiff] because of [Plaintiff's] race and color." *Id.* at 6 ¶ 31–32.  Additionally, Plaintiff alleges that at the time of the EEOC Charge, Ms. Burnette made comments about Plaintiff's age and asked Plaintiff "when she would be retiring to take care of her grandchildren full time, as well as don't you have grandchildren to take care for." *Id.* ¶ 33.

 2. <u>Alleged Retaliation for Complaining about Ms. Burnette, Culminating in Plaintiff's Removal from Federal Service</u>

Plaintiff alleges that after complaining about Ms. Burnette, she experienced "harassment regarding work assignments, denial of training opportunities, and the issuance of a proposed notice of removal." *Id.* ¶ 29.  For instance, Plaintiff alleges that Ms. Burnette rewrote the performance standards used to evaluate Plaintiff's work in a way that precluded Plaintiff from receiving a rating of 300 or higher, *id.* ¶ 30, and Plaintiff alleges "Ms. Burnette would routinely

3

deny [Plaintiff's] requests for leave and instead charge [Plaintiff] with Absent Without Official Leave (AWOL)," despite Plaintiff having approximately four weeks of accrued leave, *id.* at 7 ¶ 35.

On September 14, 2020, Ms. Burnette issued Plaintiff a Notice of Proposal to Remove from Federal Service (the "Notice"), alleging that Plaintiff would be terminated due to her absences. *Id.* ¶ 36. These absences, Plaintiff alleges, were "for up to a few hours on several days between September 2019 and September 2020" and Plaintiff responded to the Notice and stated that the records were not accurate. *Id.* Plaintiff alleges that the Notice was sent after Ms. Burnette learned of Plaintiff's complaints against Ms. Burnette accusing Ms. Burnette of discriminating against Plaintiff on the basis of Plaintiff's race, color, and age. *Id.* ¶ 37. Plaintiff alleges her termination was in retaliation for her protected EEO activity. *Id.*

### B.     Procedural history

Plaintiff filed an EEO Complaint on October 5, 2020. ECF 10-2 (Administrative Decision), at 3. The U.S. Census Bureau's Office of Civil Rights (the "Office") completed its investigation of Plaintiff's EEO Complaint on August 2, 2021. *Id.* Plaintiff requested a hearing before the Commission, and after discovery was completed, the Agency filed a motion for summary judgment. *Id.* The Office granted summary judgment in favor of the Agency on June 21, 2023. *Id.* at 11 ¶ 44. Plaintiff received notice of the right to sue from the U.S. Department of Commerce on June 26, 2023. *Id.* at 2 ¶ 2.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Given administrative exhaustion is a prerequisite to filing a federal Title VII claim, *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019), I will construe Plaintiff's prior Administrative Decision at ECF 10-2 as integral to the complaint, as its very existence establishes Plaintiff's satisfaction of a prerequisite to suit and gives rise to the legal rights asserted. *See, e.g.*, *Cheng v. U.S. Bureau of Lab. Stat.*, Civ. No. 21-03282-BAH, 2024 WL

1743409, at *5 (D. Md. Apr. 22, 2024) (considering the Final Agency Decision and an MSPB Initial Decision by an administrative law judge as "integral" to a plaintiff's Title VII claim).

## III. ANALYSIS

Plaintiff brings three claims. In Count I, Plaintiff alleges discrimination on the basis of race and color in violation of Title VII in the form of disparate treatment. ECF 1, at 10. In Count II, Plaintiff alleges retaliation for protected activity in violation of Title VII, *id.* at 14, and in Count III, Plaintiff alleges discrimination on the basis of age in violation of the ADEA, *id.* at 15. Defendant seeks to dismiss two types of claims from Plaintiff's complaint: (1) some of Plaintiff's failure-to-promote claims, ECF 10-1, at 7–8, which are asserted in Counts I and II of the Complaint, ECF 1 ¶¶ 54–55, 70; ECF 10-1, at 9 n.5; and (2) Plaintiff's claims relating to the Denial of Plaintiff's Detail Request, ECF 10-1, at 8–9.[3] As Defendant does not allege that any individual Count should be dismissed under Rule 12(b)(6) and only seeks to pick off individual

---

[3] Plaintiff interprets Defendant's motion to be making a third argument: that Plaintiff may not argue that her removal from federal service was an adverse employment action. *See* ECF 11, at 6–7 (citing ECF 10, at 2–3 n.3). The footnote Plaintiff refers to states:

> [A] federal employee covered by a collective bargaining agreement may raise that matter through the EEO process (culminating in federal court) or through a negotiated grievance procedure—but not both. *See* 29 C.F.R. § 1614.301(a). As this Court has recognized, "the employee must choose between the statutory or grievance process" "[a]nd, the election between a statutory or a negotiated grievance procedure is irrevocable," meaning "that an employee is bound by her initial election." *Moreno v. McHugh*, No. 8:10-cv-02511, 2011 WL 2791240, at *9 (D. Md. July 14, 2011). Here, Plaintiff raised her removal through a negotiated grievance procedure. As a result, she cannot now bring removal-related claims here now.

ECF 10, at 2–3 n.3. I will not address this argument at this juncture as it is not clearly asserted by Defendant due to its brief mention in a footnote, *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 766 n.7 (N.D. Ill. 2008) (noting a party's "argument [wa]s forfeited given that it was raised in a footnote"); *Marietta Area Healthcare, Inc. v. King*, Civ. No. 21-25, 2022 WL 1073335, at *7 (N.D.W. Va. Apr. 8, 2022) (noting the Fourth Circuit disfavors ruling on an issue that is minimally addressed, and that this reasoning has led district courts to decline to consider arguments raised in a footnote).

6

allegations, I will not engage in a full review of the Complaint for sufficiency. *See* ECF 10 (styling the motion as a partial motion to dismiss and moving to dismiss "certain of Plaintiff's claims in the Complaint"); ECF 10-1, at 1–2, 6–10 (noting that "the Court should dismiss certain claims as untimely or unexhausted" and limiting argument to timeliness and exhaustion of allegations, not counts); ECF 11, at 6–10 (responding only to timeliness and exhaustion claims, with no discussion of the general sufficiency of the Complaint).

### A. The 2016 and 2018 Failure-to-Promote Allegations are Time-Barred as Discrete Discriminatory Claims.

First the parties dispute the level of consideration a court may give to Plaintiff's allegations of the 2016 and 2018 incidents. Defendant argues these instances cannot constitute individual instances of discrimination. ECF 10-1, at 7–8. Plaintiff counters that these incidents were provided as "context." ECF 11, at 7–8.

It is well established that a federal employee must exhaust all available administrative remedies before bringing an employment discrimination complaint to federal court pursuant to Title VII. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.408; *Blount v. Shalala*, 32 F. Supp. 2d 339, 341 (D. Md. 1999); *Dachman v. Shalala*, 46 F. Supp. 2d 419, 434 (D. Md. 1999); *Blount v. Dep't of Health & Hum. Servs.*, 400 F. Supp. 2d 838, 840–41 (D. Md. 2004), *aff'd sub nom. Blount v. Thompson*, 122 F. App'x 64 (4th Cir. 2005); *Whims v. Mabus*, Civ. No. 11-1861, 2012 WL 12952571, at *2 (D Md. 2012).

To initiate the administrative process in the federal-sector employment context, an employee must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "The Fourth Circuit has held that a federal employee's failure to consult with an EEO counselor within the required time after an alleged act of

7

discrimination, *i.e.* within 45 days, is grounds for dismissing the employee's Title VII claim in federal court." *Blount*, 32 F. Supp. 2d at 341 (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir.1985)), *aff'd*, 199 F.3d 1326 (4th Cir. 1999); *Upshaw v. Tenenbaum*, Civ. No. 12-03130, 2013 WL 3967942, at *5 (D. Md. July 31, 2013) ("A prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed is tantamount to failure to timely exhaust all administrative remedies and ordinarily results in dismissal of a complaint of discrimination.") (internal quotation marks omitted)).

Here, there is no dispute that Defendant's failure to promote Plaintiff in 2016 and 2018 cannot form the basis of Plaintiff's Title VII Counts. *See* ECF 11, at 6 (appearing to concede as such); ECF 14, at 1 (noting Plaintiff's concession). Rather, Plaintiff asserts these incidents provide context to Plaintiff's belief that she was being discriminated against. ECF 11, at 7. Plaintiff concedes that "the discrete acts of discrimination prior to 2019 may not be actionable in this matter" and instead notes that they "paint a picture of the working ethos of the Budget division under Ms. Burnette and Mr. Whiteley." ECF 11, at 8. Plaintiff directs the Court's attention to *Dickerson v. Mack Trucks, Inc.*, which states that "evidence of a discriminatory culture toward a protected class may be used in a disparate treatment case to show discriminatory animus and rebut a defendant's non-discriminatory reason for the adverse employment action." *Id.* (quoting *Dickerson v. Mack Trucks, Inc.*, Civ. No. WDQ-12-2593, 2015 WL 5521810, at *20 n.18 (D. Md. Sept. 15, 2015) (cleaned up)); *see also Smyth-Riding v. Sci. & Eng'g Servs., Inc.*, Civ. No. WDQ-11-0558, 2014 WL 4899573, at *10–11 (D. Md. Sept. 29, 2014). Plaintiff may be right that these past incidents are relevant background evidence to any non-time-barred claims, which could establish discriminatory animus in a summary judgment motion, for instance. However, that possibility does not change that the claim is insufficient as an individual

discrete act. It is uncontested that Defendant's employment decisions in 2016 and 2018 to not promote Plaintiff are time-barred as an individual claim, and I agree with Defendant that such allegations cannot serve as an adverse employment action supporting Count I or Count II under Rule 12(b)(6) as a matter of law. *See* ECF 11, at 8; ECF 14, at 1.[4]

### B. Plaintiff's Claim that she was Denied a Detail-Request is too Vague to State a Claim for Relief.

Next, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claims relating to the Agency's decision to deny Plaintiff's detail request because that claim was not exhausted. ECF 10-1, at 8; Fed. R. Civ. P. Rule 12(b)(1). Plaintiff counters the Court does have subject matter jurisdiction because the allegations are "reasonably related" to the original complaint. ECF 11, at 9.

As an initial matter, I must treat defendant's partial motion to dismiss under Rule 12(b)(1) as a partial motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). In *Fort Bend County, Texas v. Davis*, the Supreme Court clarified that failure to exhaust administrative remedies during the EEOC process does not affect the Court's jurisdiction over a Title VII claim. 139 S. Ct. at 1850. Rather, Title VII's requirement to exhaust administrative remedies is a prerequisite to filing suit in this Court. *See id.* at 1851. ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one . . . ."). "The Court possesses subject-matter jurisdiction to consider discrimination claims that have been brought under Title VII, even if those claims have not been properly raised during the EEOC process." *Knott v. McDonalds Corp.*, Civ. No. 21-00592-LKG,

---

[4] Count I, alleging disparate treatment, still contains an allegation that Plaintiff was subjected to an adverse employment action in the form of an AWOL charge, which resulted in a pecuniary loss and led to Plaintiff's termination. *See* ECF 1, at 13 ¶ 57. Count II, alleging retaliation, still contains an allegation that in August 2020 Plaintiff was passed over for a promotion in favor of a Caucasian woman, *id.* ¶ 68, and that she was terminated as a result of the AWOL charge, *id.* ¶ 71. As such, the counts themselves survive.

2021 WL 5015750, at *5 (D. Md. Oct. 28, 2021) (citing *Fort Bend Cnty.*, 139 S. Ct. at 1850). Thus, I next consider whether Plaintiff has exhausted administrative remedies as a prerequisite to suit.

Before a federal employee can file suit under Title VII or the ADEA, she must first pursue and exhaust administrative remedies. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022); *see, e.g.*, *Zografov*, 779 F.2d at 968 ("[T]he district court properly considered only three of the allegations of discrimination since these were the only claims raised at the administrative level."). Generally, the court is not "at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). As such, the "factual allegations made in the formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). A claim will typically be barred where the complaint alleges new bases of discrimination. *See Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (declining to consider sex and color discrimination claims where the EEOC Charge only alleged race discrimination); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (holding plaintiff's federal claims of sexual harassment and claims of discrimination in pay or benefits were barred when the EEOC Charge only contained an allegation of denial of promotion on the basis of sex). "At the same time, however, lawyers do not typically complete the administrative charges, and so courts construe them liberally." *Chacko*, 429 F.3d at 509; *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594 (4th Cir. 2012) ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."); *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may

follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.").

The Fourth Circuit has sought to "to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.* Accordingly, seeking to ensure employers are on notice, the Fourth Circuit has held that where the EEOC Charge references "different time frames, actors, and discriminatory conduct than the central factual allegations in [plaintiff's] formal suit," the plaintiff's new claims will be considered unexhausted. *Chacko*, 429 F.3d at 506; *see, e.g.*, *Thiessen v. Stewart-Haas Racing, LLC*, 311 F. Supp. 3d 739, 744 (M.D.N.C. 2018) (holding that a plaintiff's failure to accommodate, promote, and retaliation claims were not "reasonably related" to his wrongful termination claim because the new claims involved different time frames, actors, and discriminatory conduct). But, in seeking to prevent plaintiffs being "tripped up" over technicalities, the Fourth Circuit has found claims that are sufficiently similar to the claims in the EEOC Charge to be exhausted in some circumstances. For instance, the Fourth Circuit "found exhaustion [in a case] where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system.'" *Snydor*, 681 F.3d at 594 (quoting *Chisholm*, 665 F.2d at 491). Additionally, the Fourth Circuit has found exhaustion "where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Id.* (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 248 (4th Cir. 2000)).

Nevertheless, where the EEOC Charge references "different time frames, actors, and discriminatory conduct than the central factual allegations in [the plaintiff's] formal suit," courts are more likely to find the plaintiff has failed to exhaust the claim. *Chacko*, 429 F.3d at 506; *see,*

*e.g.*, *Thiessen*, 311 F. Supp. 3d at 744 (M.D.N.C. 2018) (holding that claims involving different time frames, actors, and discriminatory conduct were not "reasonably related" to claims in EEOC Charge). "[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Chacko*, 429 F.3d at 510 (quoting *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001)).

In this case, in Count II of the Complaint, Plaintiff challenges the Agency's denial of her request to be detailed to the "Working Capital Fund Division." *See* ECF 1, at 14 ¶¶ 66–67. Plaintiff alleges that:

> 66. Shortly after the complaint of harassment, Ms. Hagans[] was requested for a detail to the Working Capital Fund Division. Mr. Whiteley, Ms. Hagans' second-line supervisor, refused the request, citing a concern that it would create a shortage of personnel on Ms. Hagans' then-current division.
> 67. This decision contrasted with a previous decision to detail Mr. Aubrey Harris (Caucasian) Budget Analyst GS-0560-12/13 out of the Budget Division due to Ms. Burnette's retaliation against Mr. Harris. Mr. Whiteley approved this detail, which created the shortage of personnel under the supervision of Ms. Burnette

*Id.*

The parties debate whether this allegation is reasonably related to Plaintiff's EEOC Charge. Defendant argues they are too dissimilar, *see* ECF 14, at 2, and cites to *Thiessen*, 311 F. Supp. 3d at 744, ECF 14, at 2. In *Thiessen*, a former employee brought an action against his employer, alleging failure to accommodate, failure to promote, retaliation, and wrongful discharge under the Americans with Disabilities Act (ADA). *Thiessen*, 311 F. Supp. 3d at 742. In his EEOC complaint, he alleged that he had been terminated as a result of his disability, but he made no mention of the failure to accommodate or failure to promote claim, nor did he mention any allegation relating to retaliation. *Id.* at 742. The court held that "there [wa]s nothing in the charge to indicate that Thiessen's other claims are 'reasonably related' to his claim for wrongful

discharge." *Id.* at 744 (citing *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). In coming to this conclusion, the *Thiessen* court noted that the plaintiff's EEOC complaint only mentioned a wrongful discharge claim and that his new claims "involve[d] different time frames, actors, and discriminatory conduct." *Id.* (noting the plaintiff was terminated in January 31, 2017, but the failure to transfer occurred in December 2015 and December 2016, and noting that Clyde McLeod terminated the plaintiff, whereas the plaintiff allegedly asked Donna Lawing to be transferred).

However, I am unable to evaluate whether a detail-request denial is related to Plaintiff's EEOC Charge, as the Complaint does not allege sufficient facts to undertake such an analysis. Plaintiff's Complaint never states what a detail-request is, or how this request functions—*i.e.*, as a transfer request, a promotion request, or as another benefit of employment. *See* ECF 1, at 14 ¶¶ 66–67. The Complaint does not clearly allege when this detail-request denial occurred, beyond saying it occurred "after" an unspecified "complaint of harassment." *See id.* Plaintiff also argues that Defendant has been on notice that the denial of detail-request claim was related to her failure to promote claim, by citing to her "Prehearing Statement." ECF 11, at 9. It is unclear what "Prehearing Statement" Plaintiff is citing to and Plaintiff has not identified where in the record her quote may be located. *See id.* (citing to "p. 4, ¶¶ vii and viii," though with no citation to the exhibit or ECF number); *see also* Loc. R. 105.5 (D. Md. 2023) ("Parties are responsible for ensuring all exhibits are clear and well organized . . . ."). As I cannot determine the time or nature of the detail-request denial, I cannot assess whether the detail-request claim is reasonably related to Plaintiff's failure-to-promote claims.

Given the information alleged does not sufficiently allege that the detail-request denial is "reasonably related" to Plaintiff's EEOC Claim and given that plaintiff concedes that the EEOC

Charge did not mention the detail-request, *see* ECF 11, at 8–10; ECF 14, at 2, I will grant Defendant's motion to dismiss the detail-request claim. ECF 10. If Plaintiff desires to amend the Complaint to provide additional details, Plaintiff must submit a motion requesting such relief, along with a proposed amended complaint. *See* Loc. R. 103.1(c) (D. Md. 2023) ("Any pleadings that states a claim for relief shall . . . provide a clear statement of the supporting facts for each count."); Loc. R. 103.6 (regarding amendment of pleadings).

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss is **GRANTED**. All of Plaintiff's Counts remain; however, Plaintiff is precluded from relying on Defendant's failure-to-promote allegations from 2016 and 2018 as an adverse employment action, as those claims are time-barred. Additionally, Plaintiff is precluded from relying on the detail-request denial as the basis of Plaintiff's disparate treatment claim. A separate implementing Order will issue.

Dated: May 13, 2024

/s/
Brendan A. Hurson
United States District Judge