IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TAWANNA P HAGANS,
     *Plaintiff*,

     v.

HOWARD LUTNICK,
     *Defendant*

Case No. 23-cv-1973-ABA

**MEMORANDUM OPINION**

Plaintiff Tawanna Hagans has sued Defendant Howard Lutnick as the Secretary of Commerce, alleging that she was not promoted and was ultimately fired from her job at the U.S. Census Bureau because of race, color, and age discrimination and in retaliation for her complaints about alleged discrimination. Both parties have filed motions for summary judgment. For the reasons that follow, the Court will deny Plaintiff's motion and grant Defendant's motion, entering judgment in Defendant's favor.

## I.    Factual Background

Plaintiff, who since November 2024 has been representing herself in this case, alleges that she is "a Black, African American woman" born in 1962. ECF No. 1 ¶ 15. Plaintiff began her federal service in 1998 with the Department of Energy. *Id.* ¶ 16. In 2014, she began working for the Census Bureau as a budget analyst. *Id.* ¶ 17. In 2017, Plaintiff began working under Assistant Division Chief Sharon Burnette and Chief Everette Whiteley of the Budget Division. ECF No. 52-5 at 3–4. Plaintiff alleges that she was discriminated against on the basis of her race and color when she did not receive a promotion, and on the basis of race, color, and age when she received poor performance

reviews and absent without leave ("AWOL") charges that led to her removal from federal service on January 25, 2021. Plaintiff alleges that these actions were also performed in retaliation for her protected activities.

Below, the Court will detail the evidence in the record that is relevant to these allegations. Because the parties filed cross-motions for summary judgment, the Court will consider each motion separately and will consider the relevant facts in the light most favorable to each non-moving party. *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985) ("When presented with cross-motions for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'") (quoting Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720).

### A.    Plaintiff's Poor Performance Reviews

Plaintiff's immediate manager at the Census Bureau, Ms. Burnette, recalls that from 2017 to 2020, Plaintiff "did not exceed the performance expectations of a GS-12, nor did she perform work commensurate with the work for a GS-13." ECF No. 52-6 ¶ 10. According to Ms. Burnette, "[o]n multiple occasions from 2017 to 2020, [Plaintiff] required hands-on assistance and/or detailed guidance on assignments" and her "work products [did] not consistently reflect attention to detail, accuracy, thorough review, timely completion, clear communications, independent work, adherence to guidance/instructions, and application of budget formulation skills." *Id.* For 2020, Ms. Burnette concluded that Plaintiff's "work products were increasingly . . . deficien[t] in quality, quantity, and timeliness, including missing multiple assignment deadlines and

frequently turning in assignments that required significant rework and/or were incomplete." *Id.*

In March 2020, Ms. Burnette "set up weekly meetings to help [Plaintiff] improve her performance." *Id.* But according to Ms. Burnette, Plaintiff frequently "refused to meet and rejected offers of assistance with her work assignments, including ones that she had not completed on time or had turned in with inaccurate or incomplete information." *Id.*

In June 2020, Ms. Burnette again informed Plaintiff that her performance continued to exhibit "notable deficiencies" and recommended focusing on "work organization; timely status updates; communication skills; quality, quantity, and timeliness of work products; accuracy and completeness of work assignments; thorough analysis and review of work products; identification of errors and problems in work assignments; working independently; and technical and program knowledge." ECF No. 52-8. Ms. Burnette noted that Plaintiff's performance had fallen below Level 3 (meaning her performance was less than fully successful) in two of three areas of review. *Id.*

In October 2020, Plaintiff was given a Level 1 (meaning unsatisfactory) performance rating in the same two areas. ECF No. 52-9. The related performance report details that Plaintiff was informed in February and June that her performance had fallen below a Level 3 "due to deficiencies in her work product[,]" was given "feedback on areas where she [could] improve[,]" and was offered weekly meetings with Ms. Burnette for "hands-on supervisory guidance and assistance." ECF No. 52-10. The report continued that Plaintiff's work product did not "consistently reflect attention to detail, accuracy, thorough review, timely completion, clear communications, status

3

reports, independent work, adherence to guidance/instructions, and application of budget formulation skills." *Id.*

Plaintiff does not dispute the existence of this employment record, but contends that the poor reviews were based on retaliation and harassment because she filed "a protective allegation of harassment on March 4th, 2020." ECF No. 52-3 at 166:3–22. Plaintiff also alleges that Ms. Burnette gave her poor performance reviews because of her race. *Id.* at 130:6–17. Plaintiff testified during her deposition that the basis for her belief that Ms. Burnette was discriminating against her was based on her "experience of being treated nicely by other Caucasians," her "experience to [*sic*] having color on my birth certificate," and her "gut" feeling that she had done her assignments correctly. *Id.* at 128:5–129:30. Plaintiff said, "I know it when I know it" when asked why she thought racism played a part in her white co-worker, Jennifer DiMisa, receiving much higher performance scores. *Id.* at 161:2–162:9.

### B.      Plaintiff Received Pay for Time Not Worked

On March 2, 2020, Ms. Burnette e-mailed Plaintiff that, "[d]ue to notable deficiencies in your performance and your performance falling below Level 3," Plaintiff was "no longer authorized to telework beginning on March 8, 2020." ECF No. 52-11 at 1. On March 11, Plaintiff responded to Ms. Burnette's email that "due to the uncertainty of the coronavirus cases in the United States . . . now is not a knowledgable decision for you to discontinue my telework" and that "[t]he assignment I am currently working on can be performed at home in my own environment." *Id.* at 2.

Thereafter, Plaintiff continued to telework, but was not always available because, by her own admission, she sometimes fell asleep or ran errands during work hours. ECF No. 52-3 at 171:8–172:4. Plaintiff kept track of her telework time but admits that she did

4

not record her breaks, naps, or trips to the grocery store. *Id.* at 189:9–190:23. Plaintiff conceded that she did not tell anyone at work that she went to the grocery store while teleworking because she knew she "wasn't allowed to" and she did not think she would be granted permission. *Id.* at 193:11–194:18.

Ms. Burnette recalled that on March 27, 2020, Plaintiff "failed to attend a mandatory meeting and was unreachable for about 2.5 hours because she said she had fallen asleep." ECF No. 52-12 ¶ 4. According to Ms. Burnette, in response, Plaintiff stated "in an angry voice" that "she did not have to work the entire day as a Federal employee, and no one works on Friday." *Id.* In an April 1, 2020 email, Ms. Burnette offered to let Plaintiff use her annual leave to cover the missed time and warned her that if she did not, she would "be charged Absence Without Leave (AWOL)." ECF No. 52-13 at 3. Plaintiff responded by email, "[d]o whatever you have to do Sharon! You really need to light [*sic*] up! Now is NOT the time! I do not think the weekly meetings are working." *Id.* at 2. Ultimately, Plaintiff did request two hours of sick leave to cover the time she was asleep, which Ms. Burnette approved. *Id.* at 1.

In a June 3, 2020 memorandum under the subject of "Written Counseling – Leave Warning," Ms. Burnette explained to Plaintiff that between April 6, 2020 and May 23, 2020, Plaintiff had "established a pattern of requesting unscheduled leave at least one day per week during each pay period," using a total of thirty-four hours of annual leave, and that because the leave was not requested in advance, the practice had "become detrimental to the work of this office." ECF No. 52-14. The memorandum continued that if Plaintiff's "leave usage d[id] not improve," Ms. Burnette might "take other measures to address [her] concerns" including "leave restriction and possibly disciplinary action." *Id.*

Then, in a September 14, 2020 memorandum from Ms. Burnette to Plaintiff with the subject "Proposal to Remove," Ms. Burnette proposed to remove Plaintiff from federal service because between September 3, 2019 and February 28, 2020, "badge trace monitor reports"[1] conflicted with Plaintiff's self-submitted attendance records, indicating "that on numerous occasions during this period, [Plaintiff] claimed to be at [her] assigned duty station when [she was], in fact, absent from the building." ECF No. 52-15 at 1. The memorandum detailed forty-eight such instances. *Id.* at 2–14. Plaintiff disputed only eight of these instances and suggested that the Census Bureau's scrutiny of her badge reports and time sheets was unfairly motivated by her race. ECF No. 52-16.

### C.    Plaintiff Is Not Promoted

In June 2020, the Census Bureau advertised a GS-13 Budget Analysis position for the Working Capital Fund section of the Budget Division that offered better pay than Plaintiff's GS-12 position. Plaintiff applied for the position. Mr. Whiteley was the selecting official, and he delegated the interviews and selection authority to John Sholhead, the assistant division chief/supervisor of the Formulation Group. ECF No. 52-5 ¶ 18. Mr. Sholhead asserted that he, Tamara Wells, and Tony Emanuel "selected the top 10 candidates for the position" and "also included [Plaintiff] since she was an internal candidate." ECF No. 52-17 ¶¶ 9–10. "The practice within the division is to interview all internal candidates if they apply for a position." ECF No. 52-5 ¶ 19. Besides Plaintiff, seven of the ten other candidates accepted interviews. ECF No. 52-17 ¶ 10. The interviewers considered the applicants' "years of experience, experience in budget execution, budget formulation, working capital fund experience, experience with

---

[1] Defendant described these reports in his motion as "the record of when she swiped in/out of the work building using her badge." ECF No. 52-1 at 13.

accounting systems, financial cuff record systems, experience with customer service, time management, and education." *Id.* ¶ 11. Based on these considerations, the hiring committee ranked Plaintiff the lowest (in a tie with one other candidate). ECF No. 52-18.

The highest-ranked candidate was offered the position, but he declined, so it was offered to the second highest-ranked candidate, Katrina Harrison, who accepted. ECF No. 52-19. Plaintiff contends that Ms. Harrison is "not African American." ECF No. 46 at 8. Mr. Sholhead recalled that Ms. Harrison had "immense Working Capital Fund experience," had "worked in an identical position at another Federal Agency, doing 100% revolving fund operation work," and was "very articulate in answering the interview questions, especially those related to the Working Capital Fund." ECF No. 52-20. According to Mr. Sholhead, Plaintiff, on the other hand, "had very little Working Capital Fund experience," and although she had "worked in budget formulation and helped prepare exhibits for Census budgets," that work did "not reflect Working Capital Fund experience" because it did not involve processing Inter-Agency Agreements, generating status fund reports, or working on behalf of Census Working Capital Fund operations. *Id.*

Plaintiff alleges that she "was qualified for the position" because "she had worked within the Working Capital Fund program for over 20 years" and had "substantial Working Capital fund duties in her Budget Analyst position." ECF No. 46 at 4. Plaintiff contends that her "credentials for the position were impressive" and she had an "extensive strong resume for the position." *Id.* at 6. Plaintiff alleges that "it is clear the Agency ignored and downplayed [her] Working Capital Fund experience." *Id.* Plaintiff argues that although "the evidence shows that [she] received a lower score than the selectee, the Agency offered no evidence of how or why it arrived at those scores, and it

is telling that it highlighted Ms. Harrison's Working Capital Fund experience but ignored Ms. Hagans' similar experience." *Id.* at 10. Plaintiff did not cite evidence in her motion to support these claims.

### D.     Plaintiff Is Removed from Service

In a January 25, 2021 memorandum with the subject "Decision to Remove," Mr. Whiteley explained to Plaintiff that he was sustaining the findings of forty-four times she was allegedly paid but not working that were raised in Ms. Burnette's September 14, 2020 memorandum, which meant she had "both received pay for time not worked and was absent without leave for an aggregate of approximately 49 hours in the approximately 6-month period, from September 3, 2019 to February 28, 2020." ECF No. 52-21 at 10. As a result, Mr. Whiteley "remove[d] [Plaintiff] from [her] position as Budget Analyst" as of that day. *Id.* at 11. In making this decision, he considered various mitigating factors Plaintiff had raised, but ultimately concluded that Plaintiff's actions cast "significant doubt on [her] trustworthiness and continued fitness for duty." *Id.* at 10–11.

Plaintiff asserts that Ms. Burnette's Proposal to Remove memorandum formed the basis of her dismissal and that the memorandum was grounded in discrimination and retaliation.

### E.     Plaintiff's Protected Activities

Regarding protected activities that Plaintiff claims led to the allegedly retaliatory conduct described above, Plaintiff filed an internal harassment complaint on March 4, 2020, ECF No. 52-3 at 166:10–13, alleges in her motion that she filed a "second internal complaint of harassment based on race in June 2020," ECF No. 46 at 12 (Plaintiff provides no evidence of this complaint), "initiated contact" with the Census Bureau's

EEO office on September 3, 2020, ECF No. 1 ¶ 8; ECF No. 11-2, and filed a formal discrimination complaint on October 5, 2020. ECF No. 1 ¶ 9; ECF No. 10-3.

### F.    Procedural History

Plaintiff filed her complaint in this case on July 24, 2023 and included three counts for: race- and color-based disparate treatment in violation of Title VII, retaliation in violation of Title VII, and age discrimination in violation of the Age Discrimination in Employment Act. ECF No. 1.[2] On May 13, 2024, Judge Hurson granted Defendant's partial motion to dismiss, dismissing (1) Plaintiff's failure-to-promote allegations from 2016 and 2018 as time-barred, and (2) a claim as insufficiently pled that Mr. Whiteley's refusal to grant her request for a detail assignment was racially motivated. ECF No. 17.[3] Plaintiff did not file an amended complaint. The parties proceeded to discovery, which concluded on November 24, 2024. ECF No. 25. Plaintiff then filed her motion for summary judgment on March 13, 2025 and Defendant filed a cross-motion on April 22, 2025. ECF Nos. 46 & 52. Plaintiff also filed several additional related documents: an economic damages report, ECF No. 51, portions of Mr. Whiteley's deposition transcript, ECF Nos. 55 & 56, and a "Closing Statement." ECF No. 57.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing

---

[2] Plaintiff was represented by counsel when she filed this action. Counsel later withdrew from the representation "based on 'irreconcilable differences' that '[made] continued representation inadvisable.'" ECF No. 31 (quoting ECF No. 29). Since November 2024, Plaintiff has been proceeding *pro se*.

[3] Plaintiff relies on the allegations regarding the detail-request to support her failure-to-promote claim in her motion for summary judgment. ECF No. 46 at 6–7. The Court will not consider those allegations in light of Judge Hurson's ruling.

that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the Court will award summary judgment unless the non-moving party identifies specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

### III.    Discussion

Plaintiff alleges discrimination based on her race and color in connection with Defendant's failure to promote her as well as retaliation for her allegedly protected activities. She also alleges that her poor performance reviews, AWOL charges, and her dismissal based on the charges were the product of race, color and age discrimination and/or retaliation.

It is unlawful to discriminate against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of, among other

10

things, race, color, or age, or in retaliation for engaging in a protected activity. Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3 ("Title VII"); the

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 6239(a) ("ADEA"). For both

Title VII and ADEA claims, when plaintiffs rely on circumstantial evidence, they

generally try their cases under the burden-shifting framework articulated in *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792 (1973), as is the case here.

Under this framework, a plaintiff must first make out a prima face case of

discrimination. For a Title VII or ADEA disparate treatment claim, a plaintiff must

prove: (1) membership in a protected class, (2) satisfactory job performance, (3) an

adverse employment action, and (4) that similarly situated employees outside the

protected class received more favorable treatment. *Coleman v. Maryland Ct. of

Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd,* 566 U.S. 30 (2012); *Mereish v.

Walker*, 359 F.3d 330, 334 (4th Cir. 2004) (ADEA claim). Regarding a failure-to-

promote claim specifically, a plaintiff must prove: (1) she is a member of a protected

class, (2) she applied for a specific position for which she was qualified, and (3) her non-

selection occurred under circumstances giving rise to an inference of discrimination.

*Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). For retaliation claims, a

plaintiff must prove that (1) she engaged in a protected activity, (2) there was a

materially adverse employment action, and (3) there was a causal link between the two

events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

Once a plaintiff makes a prima facie showing, the burden of production shifts to

the defendant to offer evidence of a legitimate, non-discriminatory/non-retaliatory

reason for the relevant employment decisions. *EEOC v. Sears Roebuck & Co.*, 243 F.3d

846, 852 (4th Cir. 2001). A legitimate reason is not necessarily a wise reason, but rather

any reason that does not discriminate. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)).

If the defendant offers such a reason, the burden then shifts back to the plaintiff to show the defendant's proffered reason is mere pretext for discrimination or retaliation. *Sears Roebuck*, 243 F.3d at 852. For a Title VII discrimination claim, a plaintiff can establish pretext by "showing that the employer's proffered explanation is unworthy of credence," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)), and that, ultimately, discrimination "was a motivating factor" in the adverse employment action, 42 U.S.C.A. § 2000e-2(m). But, to demonstrate pretext in a Title VII retaliation claim or a discrimination claim under the ADEA, the plaintiff must go beyond that standard and demonstrate that the plaintiff's protected activity or age was the "but-for" cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)."); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.").

Below, the Court will discuss, from the perspective of each party's motion, the three causes of action in relation to the two categories of alleged adverse employment

12

actions: (1) Defendant's failure to promote Plaintiff and (2) Plaintiff's poor performance reviews, AWOL charges, and dismissal by Defendant.

### A.   Defendant's Motion

#### 1.   Failure to Promote

As stated, for her Title VII race and color discrimination claim based on Defendant's failure to promote her, Plaintiff must first show that (1) she is a member of a protected class, (2) she applied for a specific position for which she was qualified, and (3) her non-selection occurred under circumstances giving rise to an inference of discrimination. *Williams*, 370 F.3d at 430. Here, Plaintiff is African American and the woman who filled the position Plaintiff sought was not. Thus, factors one and three are met. As to the second factor, the evidence shows that Plaintiff was not the most qualified candidate, but it does not show that she was necessarily unqualified. Plaintiff has shown a prima facie case of race and color discrimination in connection with her failure to hire claim.

For her retaliation claim, Plaintiff must prove that: (1) she engaged in a protected activity; (2) there was a materially adverse employment action; and (3) there was a causal link between the two events. *Boyer-Liberto,* 786 F.3d at 281. Here, approximately three months after Plaintiff lodged an internal complaint about harassment, she was denied a promotion. The Court will assume without deciding that Plaintiff has established a prima facie case of retaliation.

Defendant contends that there are legitimate non-discriminatory/retaliatory reasons for hiring Ms. Harrison for the GS-13 Budget Analysis position instead of Plaintiff, including that Ms. Harrison was judged to be the far better qualified candidate. Plaintiff contends that Defendant's reasons for not promoting her are pretextual

because Plaintiff was qualified and had many years of experience, and that although the hiring committee emphasized Ms. Harrison's experience, it ignored her similar experience. She also argues that the scoring criteria were subjective, and that Defendant has not offered evidence regarding how the scores were tallied.

But as discussed above, the undisputed evidence establishes the criteria that the hiring committee used, ECF No. 52-17 ¶ 11, that they did not believe Plaintiff was the most qualified candidate, ECF No. 52-18, why Mr. Sholhead did not view Plaintiff's experience as directly relevant, ECF No. 52-20, and that they believed they hired the most qualified candidate that accepted the position, ECF No. 52-19. *See, e.g., White v. Seventh Jud. Cir. of Maryland*, 846 F.2d 75 (4th Cir. 1988) (table) (finding no evidence of discrimination where the less qualified plaintiff was not selected for a position). Essentially, Plaintiff's argument for pretext is that she thinks she was the better candidate. Plaintiff's "naked opinion, without more, is not enough" to prove her Title VII claims. *Goldberg v. Green*, 836 F.2d 845, 848 (4th Cir. 1998); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (holding that an employee "cannot establish pretext by relying on criteria of her own choosing when the employer based its decision on other grounds"); *see also DeJarnette*, 133 F.3d at 299 (holding that in determining if a plaintiff's performance was adequate, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff") (cleaned up).

Moreover, "[w]hile temporal proximity of events may establish a prima facie case for retaliation, 'temporal proximity alone does not rebut [a defendant's] legitimate, and uncontested, ground of termination.'" *Dziwulski v. Mayor & City Council of Baltimore*, Case No. 18-cv-277-DLB, 2020 WL 1034539, at *11 (D. Md. Mar. 3, 2020) (quoting

14

*Simons v. Mi-Kee-Tro Metal Mfg., Inc.*, Case No. 18-cv-1270-PJM, 2019 WL 4143005, at *5 (D. Md. Aug. 30, 2019)); *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998) (holding that knowledge by the employer of a protected activity "is necessary to establish causation, but it is not sufficient" to prove a claim because "[*p*]*ost hoc ergo propter hoc* is not enough to support a finding of retaliation") (quoting *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998)).

Viewing the facts in the light most favorable to Plaintiff, she has failed to prove that Defendant's reasons for not selecting her for the position were pretext for discrimination or retaliation. *See Giarola v. Com. of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985) (holding that the plaintiff failed to show she was the more qualified candidate and therefore failed to show discriminatory treatment); *Ham v. Wash. Suburban Sanitary Com'n*, 158 Fed. App'x 457, 475 (4th Cir. 2005) (holding that the plaintiff failed to show pretext where there was "ample evidence" that he was not promoted because of his abrasive management style).

### 2.  Performance Reviews, AWOL Charges, and Dismissal

Plaintiff also alleges that her poor performance reviews, AWOL charges, and her ultimate dismissal were the product of race, color, and age discrimination and retaliation.

As stated, for her disparate treatment claims, Plaintiff must prove: (1) her membership in a protected class, (2) her satisfactory job performance, (3) that she was subjected to an adverse employment action, and (4) that similarly situated employees outside the protected class received more favorable treatment. *Coleman*, 626 F.3d at 190; *Mereish,* 359 F.3d at 334. At a minimum, when viewing the facts in the light most

favorable to Plaintiff, she has not established satisfactory job performance. As discussed above, there is ample uncontroverted evidence in the record that her performance was less than satisfactory. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514–15 (4th Cir. 2006) ("[T]he prima facie case requires the employee to demonstrate 'that he was "qualified" in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance.'") (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)); *Jyachosky v. Winter*, 343 F. App'x 871, 876 (4th Cir. 2009) (holding that the plaintiff could not establish prima facie case because there was "ample evidence in the record that she was having substantial problems with her supervisory role"). As discussed below regarding pretext, Plaintiff has also not shown that adequately similarly situated individuals were treated differently than she was. Thus, Plaintiff has not made out a prima face case of discrimination based on her performance reviews, AWOL charges, and dismissal.

For her retaliation claim, Plaintiff has at least shown that she engaged in protected activities, she was dismissed, and there is some temporal proximity between her October 5, 2020 formal discrimination complaint and Mr. Whiteley's January 25, 2021 memorandum dismissing her. *Boyer-Liberto*, 786 F.3d at 281. Thus, the Court will assume without deciding that Plaintiff has established a prima facie retaliation claim based on her dismissal.

But Defendant has met its burden of providing a legitimate reason for Plaintiff's dismissal: that she was dismissed because she was paid for time that she did not work. Plaintiff argues that this reason is pretextual because Defendant treated two similarly

16

situated white employees differently than it treated her. Plaintiff has not established that Defendant's reason for the termination was pretextual.

Plaintiff contends that she was treated worse than Jennifer DiMisa, a white co-worker three years younger than Plaintiff who was supervised by Ms. Burnette and who Plaintiff claims "also left her workstation throughout the workday and exited the building at times," ECF No. 46 at 12, but was not disciplined. In her motion, Plaintiff does not provide details about when and why Ms. DiMisa left her workstation, so it is impossible to adequately compare the two women's situations. Plaintiff also contends that Ms. Burnette was friends with Ms. DiMisa and that Ms. Burnette gave Ms. DiMisa better performance reviews than Plaintiff and performance awards that Plaintiff did not receive. ECF No. 52-3 at 160:16–161:1, 163:3–15. But Plaintiff testified that she merely believes Ms. DiMisa's better performance reviews and rewards indicate discrimination and retaliation because Ms. DiMisa "was a Caucasian." ECF No. 52-3 at 130:6–11. The mere fact that they were of different races and Plaintiff's own belief of the existence of discrimination or retaliation is not adequate evidence of pretext, especially when weighed against the "abundant and uncontroverted evidence" of Plaintiff's performance issues. *See Foreman v. Weinstein*, 485 F. Supp. 2d 608, 615 (D. Md. 2007) (holding that an employer is entitled to summary judgment if the plaintiff "created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148), *aff'd*, 258 F. App'x 584 (4th Cir. 2007); *see Anderson*, 477 U.S. at 252 (holding that the "mere existence of a

17

scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment).

Plaintiff also argues that another white employee, Aubry Harris, was charged with 280 hours of AWOL, but Ms. Burnette only recommended a seven-day suspension for him, and ultimately, he received no discipline in light of a settlement of his EEOC complaint. ECF No. 56-2 at 74:1–76:3. Plaintiff alleges that Mr. Harris was "similarly situated" to her since he was also "a Budget Analyst GS-12 in the Budget Formulation group under Ms. Burnette's supervision," ECF No. 46 at 6, but Plaintiff does not describe how she and Mr. Harris or their situations were otherwise similar.

Insofar as Plaintiff seeks to support her claim of discrimination using comparator evidence, she is "required to show that [she is] similar in all relevant respects to [her] comparator," but, here, Plaintiff has failed to offer any facts showing that she and Mr. Harris had "enough common features" to "allow [for] meaningful comparison." *Haywood v. Locke*, 387 F. App'x 355, 359–60 (4th Cir. 2010) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)); *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."). This is especially true because the reason Mr. Harris did not receive discipline was that he and Defendant entered into a settlement, ECF No. 56-2 at 75:20–76:3, and Mr. Whiteley distinguished Plaintiff and Mr. Harris because Plaintiff "was also charged with receipt of [pay] for time not worked and Mr. Harris was not," *id.* at 78:15–19.

A plaintiff's discrimination claims cannot be based only on a "'belief' and 'gut feeling.'" *Jeffress v. Barnhart*, Case No. 05-cv-2888-JFM, 2006 WL 1042367, at *1 (D.

Md. Apr. 18, 2006), *aff'd*, 216 F. App'x 316 (4th Cir. 2007); *Sawada v. Potter*, Case No. 06-cv-754-AMD, 2007 WL 9759280, at *3 (D. Md. Feb. 9, 2007), *aff'd*, 294 F. App'x 36 (4th Cir. 2008) (granting summary judgment where the plaintiff merely "developed a 'feeling' that she was not being treated fairly"). Ultimately, Plaintiff's arguments amount to a contention that she is African American, black, older than forty years old, and engaged in protected activities, and she feels that she was not treated fairly as a result. Plaintiff has not established that the reasons for her poor performance reviews and the memoranda related to her dismissal were untrue and pretextual.

Finally, Plaintiff alleges one example of what she contends is direct evidence of age discrimination. She contends that Ms. Burnette suggested that Plaintiff retire so that she could care for her grandchildren. *See* ECF No. 52-3 at 183:11–184:2, 184:24–185:12. Plaintiff provides no facts about the date or exact nature of these alleged comments. Moreover, "general or ambiguous remarks referring to the process of generational change" do not demonstrate age discrimination. *Mereish*, 359 F.3d at 336–37; *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511–12 (4th Cir. 1994) (holding that an employer's statement that "there comes a time when we have to make way for younger people" "creates no inference of age bias" because the "comment reflects no more than a fact of life and as such is merely a 'truism[ ]' that carries with it no disparaging undertones") (quoting *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir. 1980)). This allegation is not sufficient to defeat Defendant's motion for summary judgment.

Viewing the facts in the light most favorable to Plaintiff, she has not met her burden of establishing that her poor performance records, Ms. Burnette's suggestion of dismissal, and her dismissal were pretext for race, color, or age discrimination or were

retaliatory. Thus, Plaintiff has not rebutted Defendant's proffered reason for the alleged adverse actions.

### B.   Plaintiff's Motion

As detailed above, Plaintiff has not shown, even when viewing the facts in the light most favorable to her, that Defendant's failure to promote her or Defendant's decision to dismiss her were based on race, color, or age discrimination or were retaliatory. For the same reasons, when viewing the facts in the light most favorable *to Defendant*, Plaintiff has certainly not shown that she is entitled to summary judgment.

### IV.   CONCLUSION

For these reasons, Plaintiff's motion for summary judgment will be denied and Defendant's motion for summary judgment will be granted, with judgment being entered in Defendant's favor.

A separate order follows.

Date:  March 17, 2026

_____/s/_____
Adam B. Abelson
United States District Judge

20